BLAKE G. HALL
Idaho State Bar No. 2434
ANDERSON NELSON HALL SMITH, P.A.
490 Memorial Drive
Post Office Box 51630
Idaho Falls, Idaho 83405-1630
Telephone (208) 522-3001
Fax (208) 523-7254
Attorneys for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VISTA ENGINEERING TECHNOLOGIES, LLC, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER TECHNOLOGY, INC., an Idaho Corporation,<br><br>Defendant. | Case No. CIV-09-08-E-BLW<br><br>**ANSWER AND DEMAND FOR JURY TRIAL AND COUNTERCLAIM** |

COMES NOW Defendant Premier Technology, Inc. ("Premier"), by and through the undersigned counsel, as and for an answer to Plaintiff's Complaint pleads and alleges as follows:

## FIRST DEFENSE

Plaintiff's Complaint, and each and every allegation contained therein, fails to state a claim against Defendant upon which relief can be granted.

## SECOND DEFENSE

1.     Defendant denies each and every allegation contained in Plaintiff's Complaint

unless expressly and specifically hereinafter admitted.

2.      With regard to paragraphs 1.1, 1.2, and 1.3, Defendant admits the same.

3.      With regard to paragraph 1.4, Defendant admits this instant action is contractual in nature and denies the remainder of the allegation contained therein.

4.      With regard to paragraphs 1.5, 2.1, 2.2, 3.1, 3.2, and 3.3, Defendant admits the same.

5.      With regard to paragraph 3.4, Defendant admits that the referenced revisions and line items contained in such revisions were signed and agreed upon by both Parties.

6.      With regard to paragraph 3.5, Defendant admits the same.

7.      With regard to paragraph 3.6, Defendant denies the same.

8.      With regard to paragraph 3.7, Defendant admits the same.

9.      With regard to paragraph 3.8, Defendant denies the same.

10.     With regard to paragraph 3.9, Defendant admits the same and adds that Defendant is not required to provide Plaintiff a copy of the independent auditor's report.

11.     With regard to paragraph 3.10, Defendant denies the same.

12.     With regard to paragraph 3.11, Defendant admits Premier gave Vista Notice of Cancellation of the Contract and denies the remainder of the allegations contained therein.

13.     With regard to paragraphs 3.12, , 3.13, and 3.14 Defendant denies the same.

14.     With regard to paragraphs 4.1, 5.1, 6.1, 7.1, 8.1, 9.1, and 10.1, Defendant repleads each and every response previously made in responding to the allegations of Plaintiff's Complaint.

15.     With regard to paragraph 4.2, Defendant admits the same.

16.     With regard to paragraphs 4.3, 4.4, 4.5, 4.6, and 4.7, Defendant denies the same.

17.     With regard to paragraph 5.2, Defendant states that the allegation contained therein is a legal conclusion and therefore neither admits nor denies the same.

18.     With regard to paragraphs 5.3, 5.4, 6.2, 6.3, 6.4, 6.5, 6.6, and 7.2, Defendant denies the same.

19.     With regard to paragraph 7.3, Defendant admits receipt of said invoice, however, is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and therefore neither admits nor denies the same.

20.     With regard to paragraph 7.4, Defendant admits the same except that the authorization to bill the actual amount was under certain conditions and/or requirements which have not been met.

21.     With regard to paragraph 7.5, Defendant denies the same.

22.     With regard to paragraph 7.6, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore neither admits nor denies the same.

23.     With regard to paragraph 8.2, Defendant denies the same.

24.     With regard to paragraph 8.3, Defendant admits receipt of said invoice, however, is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and therefore neither admits nor denies the same.

25.     With regard to paragraphs 8.4 and 8.5, Defendant denies the same.

26.     With regard to paragraph 8.6, Defendant is without knowledge or information

sufficient to form a belief as to the truth of the allegations contained therein and therefore neither admits nor denies the same.

27.     With regard to paragraph 9.2, Defendant denies the same.

28.     With regard to paragraph 9.3, Defendant admits receipt of said invoice, however, is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and therefore neither admits nor denies the same.

29.     With regard to paragraph 9.4, Defendant admits the same except that the authorization to bill the actual amount was under certain conditions and/or requirements which have not been met.

30.     With regard to paragraph 9.5, Defendant denies the same.

31.     With regard to paragraph 9.6, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and therefore neither admits nor denies the same.

32.     With regard to paragraph 10.2, Defendant admits receipt of Invoice No. PT-63031-VET-35 ("Invoice No. 35") and denies the remainder of the allegations contained therein.

33.     With regard to paragraphs 10.3, 10.4, and 10.5, Defendant denies the same.

34.     With regard to paragraph 10.6, Defendant admits receipt of said invoice, however, is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and therefore neither admits nor denies the same.

35.     With regard to paragraph 10.7, Defendant denies the same.

36.     With regard to paragraph 10.8, Defendant admits receipt of said invoice,

however, is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and therefore neither admits nor denies the same.

37.     With regard to paragraphs 10.9, 10.10, and 10.11, Defendant denies the same.

38.     With regard to paragraph 10.12, Defendant admits receipt of said invoice, however, is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and therefore neither admits nor denies the same.

39.     With regard to Plaintiff's Prayer for Relief, Defendant denies that Plaintiff is entitled to relief in this matter.

## THIRD DEFENSE

Plaintiff's claims are precluded on the basis that it breached the Contract entered into between the parties.

## FOURTH DEFENSE

Plaintiff's claims are precluded on the basis that it cannot establish and/or substantiate several of the charges invoiced to Defendant.

## FIFTH DEFENSE

Plaintiff's claims are precluded by the doctrines of waiver, estoppel, equitable estoppel, and quasi-estoppel.

## SIXTH DEFENSE

Plaintiff's claims are precluded by the doctrine of unclean hands.

## SEVENTH DEFENSE

Plaintiff has failed to mitigation its damages, if any.

## EIGHTH DEFENSE

The foregoing defenses are applicable, where appropriate, to any and all of Plaintiff's claims for relief.  In asserting these defenses, this Defendant does not admit that it has the burden of proving the allegations or denials contained in the defenses, but, to the contrary, asserts that by reasons of the denials and/or by reason of relevant statutory and judicial authority, the burden of proving the facts relevant to many of the defenses and/or the burden of proving the inverse to the allegations contained in many of the defenses is upon the Plaintiff.  Defendant does not admit, in asserting any defense, any responsibility or liability, but, to the contrary, specifically deny any and all allegations of responsibility and liability in Plaintiff's Complaint.

## NINTH DEFENSE

Defendant has considered and believes that it may have additional defenses to Plaintiff's Complaint, but cannot at this time, consistent with Rule 11 of the Idaho Rules of Civil Procedure, state with specificity those defenses.  Accordingly, Defendant reserves the right to supplement its Answer and add additional defenses as discovery in this case progresses.

## COUNTERCLAIM

COMES NOW the Defendant, Premier Technology, Inc. ("Premier"), and as for a Counterclaim against the Plaintiff, Vista Engineering Technologies, LLC ("Vista"), complains and alleges as follows:

## GENERAL ALLEGATIONS

1.      Vista is a California corporation registered to do business in the State of

Idaho, with its principal place of business in Richland, Washington.

2.      Premier is an Idaho corporation with its principal place of business in

Blackfoot, Idaho.

3.      Premier and Vista are collectively referred to herein as the "Parties."

4.      This action arises out of and relates to the Parties' contract for engineering

analysis and certification services.

5.      The amount in controversy exceeds $75,000.00.

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in

that the Parties are citizens of different states and the amount in controversy exceeds

$75,000.00.

7.      Venue in this Court is authorized by 28 U.S.C. § 1391, in that Defendant

Premier resides in the District.

8.      On or about October 19, 2006, Vista executed Purchase Order No. 63031

("Purchase Order").

9.      Revisions 1 through 14 to the Purchase Order were agreed upon and accepted

by Vista, dated from November 3, 2006 to March 20, 2008.

10.     Vista materially breached the contractual terms of the Purchase Order by

failing to provide deliverables that were accepted by Premier's customer.

11.     On June 12, 2008, Premier gave Vista Notice of Cancellation of the Contract

With Cause.

## FIRST CAUSE OF ACTION
### Material Breach of Contract

12.     Premier re-pleads and incorporates herein paragraphs 1 through 11 as if set forth more fully hereinafter.

13.     The Parties entered into a valid Contract for the performance of engineering services.

14.     Vista was obligated to provide deliverables under the Contract that would be accepted by Premier's customer, specifically design analyses, calculations, specifications, and references that would meet the customer's approval.

15.     Vista materially breached the contractual terms of PO 63031 by failing to ever provide deliverables that were accepted by Premier's customer.

16.     Premier has been harmed by Vista's failure to perform.

## SECOND CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing

17.     Premier re-pleads and incorporates herein paragraphs 1 through 16 as if set forth more fully hereinafter.

18.     In the State of Idaho, every contract contains an implied covenant of good faith and fair dealing.

19.     Vista breached this implied covenant by failing to ever provide deliverables that were acceptable to Premier's customer.

20.     Premier has been harmed by Vista's breach.

## THIRD CAUSE OF ACTION
### Unjust Enrichment

21.     Premier re-pleads and incorporates herein paragraphs 1 through 20 as if set

forth more fully hereinafter.

22.     To date, Premier has paid Vista in the amount of $672,018.00 for which no

benefit could be achieved by Premier because none of the deliverables from Vista were ever

accepted by Premier's customer.

23.     Because no benefit was received by Premier for Vista's deliverables, Premier

has been harmed in the amount of $672,018.00 paid to Vista for deliverables which were

unusable.

**FOURTH CAUSE OF ACTION**
**Loss of Reputation/Loss of Business Opportunity**

24.     Premier re-pleads and incorporates herein paragraphs 1 through 23 as if set

forth more fully hereinafter.

25.     As a result of Vista's failure to provide deliverables that were acceptable to

Premier's customer, failure to meet the time schedules of the Contract, and conduct towards

Premier's customer Premier has suffered a loss of reputation within the industry and loss of

business opportunities that it could have profited from but for Vista's conduct in an amount

to be proven at trial.  Premier has also suffered general damages in an amount to be proven

at trial.

**FIFTH CAUSE OF ACTION**
**Breach of Express Warranty**

26.     Premier re-pleads and incorporates herein paragraphs 1 through 25 as if set

forth more fully hereinafter.

27.     Vista expressly warranted in paragraph 10 of the Standard Purchase Order

Terms and Conditions attached as Exhibit A to Vista's Complaint that all products and

services covered by the Purchase Order would conform to the specifications, patterns, drawings, samples or other descriptions upon which the Purchase Order was based, would be fit and sufficient for the purpose intended, merchantable, of good material and workmanship, free from defect in design, inspection, test, and acceptance.

28.     Vista breached its warranty because it never provided deliverables that were acceptable or conformed to the specifications, patterns, drawings, samples or other descriptions required of Premier's customer.

29.     As a direct and proximate result of the breach of said warranty Premier has suffered and been damaged as set forth below in the damages section of this Counterclaim.

**SIXTH CAUSE OF ACTION**
**Breach of Warranty of Fitness for a Particular Purpose**

30.     Premier re-pleads and incorporates herein paragraphs 1 through 29 as if set forth more fully hereinafter.

31.     Vista expressly warranted in paragraph 10 of the Standard Purchase Order Terms and Conditions attached as Exhibit A to Vista's Complaint that all products and services covered by the Purchase Order would be fit and sufficient for the purposes intended.

32.     Vista breached its warranty because it never provided deliverables that were acceptable or conformed to the specifications, patterns, drawings, samples or other descriptions required of Premier's customer.

33.     As a direct and proximate result of the breach of said warranty Premier has suffered and been damaged as set forth below in the damages section of this Counterclaim.

## SEVENTH CAUSE OF ACTION
### Breach of Express Warranty of Merchantability

34.     Premier re-pleads and incorporates herein paragraphs 1 through 33 as if set forth more fully hereinafter.

35.     Vista expressly warranted in paragraph 10 of the Standard Purchase Order Terms and Conditions attached as Exhibit A to Vista's Complaint that all products and services covered by the Purchase Order would be merchantable.

36.     Vista breached its warranty because it never provided deliverables that were acceptable or conformed to the specifications, patterns, drawings, samples or other descriptions required of Premier's customer.

37.     As a direct and proximate result of the breach of said warranty Premier has suffered and been damaged as set forth below in the damages section of this Counterclaim.

## EIGHTH CAUSE OF ACTION
### Indemnification

38.     Premier re-pleads and incorporates herein paragraphs 1 through 37 as if set forth more fully hereinafter.

39.     In paragraph 11 of the Standard Purchase Order Terms and Conditions attached as Exhibit A to Vista's Complaint, Vista expressly agreed to assume entire responsibility and liability for any and all losses, expenses, damages or injuries of any kind or nature whatsoever caused by resulting from or arising out of or in connection with the work and services provided by Vista pursuant to the Purchase Order or breach of the Purchase Order.

40.     Vista breached the Purchase Order and caused Premier losses, expenses,

damages, and injuries as a direct and proximate result of the work and services it provided pursuant to the Purchase Order because Vista never provided deliverables that were acceptable or conformed to the specifications, patterns, drawings, samples or other descriptions required of Premier's customer; said deliverables were unusable.

41.     As a direct and proximate result of Vista's failure to provide deliverables that were acceptable or conformed to the specifications, patterns, drawings, samples or other descriptions required of Premier's customer Vista is obligated to assume entire responsibility and liability for Premier's damages as set forth below in the damages section of this Counterclaim.

## NINTH CAUSE OF ACTION DAMAGES

### Specific Damages

42.     Premier re-pleads and incorporates herein paragraphs 1 through 41 as if set forth more fully hereinafter.

43.     Because no benefit was received by Premier for Vista's deliverables, Premier has been harmed in the amount of $672,018.00 paid to Vista for deliverables which were unusable.

### Additional Cost Required for Vista Replacement

44.     Premier re-pleads and incorporates herein paragraphs 1 through 43 as if set forth more fully hereinafter.

45.     As result of Vista's failure to provide deliverables that were acceptable to Premier's customer as well as Vista's inability to meet the required schedule for final document revisions Premier was forced to cancel Vista's Contract and replace it with a new

subcontractor.

46.     The entire cost of the new subcontractor would not have had to be born by Premier but for Vista's failures described above.  As a result of Vista's failures described above, Premier has been damaged in the amount of $246,900.00 for costs paid to the new subcontractor.

**Costs of Project Management Time**

47.     Premier re-pleads and incorporates herein paragraphs 1 through 46 as if set forth more fully hereinafter.

48.     From the award of the Contract to Vista in October of 2006 through the descoping of the slab-tank engineering portion of the work at the beginning of March of 2008, the Premier Project Manager spent seventy-five percent (75%) of the hours charged to this project managing engineering-related issues.  During this time, Vista was the only engineering firm on the project.

49.     As noted in the Third Cause of Action, all payments made to Vista by Premier gave no benefit to Premier because Vista's deliverables were unacceptable to Premier's customer.  Likewise all of the time expended by the Premier Project Manager associated with engineering-related issues are lost costs to Premier as a result of Vista's failure to provide acceptable deliverables and therefore Premier seeks reimbursement from Vista for the lost costs associated with the lost time in the amount of $151,662.00.

**Costs of Engineering Time**

50.     Premier re-pleads and incorporates herein paragraphs 1 through 49 as if set forth more fully hereinafter.

51.     Vista's inability to obtain approval of deliverables by Premier's customer detrimentally impacted the schedule of the project and forced Premier to assign its own internal engineering resources to assist Vista in monitoring schedule for revisions of deliverable documents, including travel to Vista's facility.  Additionally, Premier's internal engineering staff spent time working with Vista on resolution to technical issues that were fully with Vista's scope to resolve.

52.     As noted in the Third Cause of Action, all payments made to Vista by Premier gave no benefit to Premier because Vista's deliverables were unacceptable to Premier's customer.  Likewise all of the time expended by the Premier's internal engineering staff associated with engineering-related issues are lost costs to Premier as a result of Vista's failure to provide acceptable deliverables and therefore Premier seeks reimbursement from Vista for the lost costs associated with the lost time in the amount of $59,750.00.

**Costs of Contract Administration Time**

53.     Premier re-pleads and incorporates herein paragraphs 1 through 52 as if set forth more fully hereinafter.

54.     Premier's executive staff and contract administration team expended significant time and effort as a result of Vista's inability to accurately and adequately track accounting costs, provide supporting documentation for invoices amounts, and respond to legal issues both with Vista directly as well as with Premier's customer as a result Vista's conduct and actions and the customer's assessment of Vista.

55.     As noted in the Third Cause of Action, all payments made to Vista by Premier gave no benefit to Premier because Vista's deliverables were unacceptable to Premier's

customer.  Likewise all of the time expended by the Premier's executive staff and contract

administration team due to Vista's inability to accurately and adequately track accounting

costs, provide supporting documentation for invoices amounts, and respond to legal issues

both with Vista directly as well as with Premier's customer as a result Vista's conduct and

actions and the customer's assessment of Vista are lost costs to Premier as a result of Vista's

failure to provide acceptable deliverables and therefore Premier seeks reimbursement from

Vista for the lost costs associated with the lost time in the amount of $121,405.00.

**Cost of External Analytical Business Support Audit of Vista**

56.    Premier re-pleads and incorporates herein paragraphs 1 through 55 as if set

forth more fully hereinafter.

57.    Purchase Order 60331 required Vista to supply adequate supporting evidence

for all Time & Materials work invoiced, however, Vista continually failed to support

invoicing claims as well as repeatedly revising estimated values for Time & Materials

claims which removed all confidence in Vista's accounting ability and required Premier to

send in an auditor to attempt to verify and substantiate Vista's claims as allowed under the

Contract.

58.    As noted in the Third Cause of Action, all payments made to Vista by Premier

gave no benefit to Premier because Vista's deliverables were unacceptable to Premier's

customer.  Likewise all the cost of the external audit are lost costs to Premier as a result of

Vista's failure to provide acceptable deliverables and therefore Premier seeks

reimbursement from Vista for the lost costs associated with the external audit in the amount

of $7,268.00.

**Cost of External Accounting Audit of Vista Invoices 32, 33, 34, and 35**

59.      Premier re-pleads and incorporates herein paragraphs 1 through 58 as if set forth more fully hereinafter.

60.      As a result of the inaccuracy and complete lack of information contained within Vista Invoices 32, 33, 34, and 35, Premier was required to retain an external auditor in an attempt to make sense of the invoices and associated time cards.

61.      As noted in the Third Cause of Action, all payments made to Vista by Premier gave no benefit to Premier because Vista's deliverables were unacceptable to Premier's customer.  Likewise all the cost of the external audit are lost costs to Premier as a result of Vista's failure to provide acceptable deliverables and therefore Premier seeks reimbursement from Vista for the lost costs associated with the external audit of Vista Invoices 32, 33, 34, and 35 in the amount of $10,224.00.

**Attorney Fees Incurred as a Result of Vista's Failure to Justify Static Analysis**

62.      Premier re-pleads and incorporates herein paragraphs 1 through 61 as if set forth more fully hereinafter.

63.      During the course of the project, Premier's customer demanded that Vista perform dynamic analysis on the project, however, Vista refused to do so and chose to fight the issue and contend that static analysis could be used instead.  As a result of Vista's actions and conduct in contending the issue, Premier was required to retain attorneys to resolve the issue and in the end Vista failed to justify to Premier's customer that static analysis could be used.  As a result of Vista's conduct and failure to justify static analysis and desire to contend the issue with Premier's customer, Premier incurred attorney's fees of

approximately $261,484.00 for which Premier now seeks reimbursement from Vista.

**Second Trip to Denver, CO because Vista would not PE Stamp their Calculation**

64.     Premier re-pleads and incorporates herein paragraphs 1 through 63 as if set forth more fully hereinafter.

65.     In response to Premier's customer's request for Vista to go to Denver and work with the customer directly in learning a specific methodology desired for the slab tank dynamic analysis calculations Vista was to be involved with the generation of a methodology document that would describe exactly what was agreed to be done for these analyses in order to meet the customer's needs.  This included application of a PE stamp by Vista on these calculations.

66.     Vista went to Denver, CO in June of 2007 and completed the methodology document, which was signed by Vista, Premier, and Premier's customer.  Vista worked on finishing the first calculation using said methodology until October 2007.  Vista did not notify Premier until one to two weeks before submitting the deliverable that they were unwilling to PE stamp the document.  The requirement for a PE stamp on the document is specifically required for licensing of the customer's facility, and was required by the applicable documents issued as part of the initial purchase order.

67.     Due to the nature of use for the equipment, Vista's sudden and unforeseen unwillingness to provide the required PE stamp, without any prior warning, created further hostility towards Premier from the customer.  It also forced another meeting in Denver, CO to resolve the issues Vista was claiming prevented them from application of their PE stamp.  As a result of said conduct and actions on the part of Vista, Premier was damaged in the

amount of $1,300 for additional travel to Denver, CO.

**Overtime Charges Due to Schedule Impact on Annular Tank Project 6314**

68.     Premier re-pleads and incorporates herein paragraphs 1 through 67 as if set forth more fully hereinafter.

69.     As a result of Vista's failure to provide deliverables that were acceptable to Premier's customer, Premier's schedule was negatively impacted and forced Premier to work overtime on Annualr Tank Project 6314 to recover as much as possible and support the overall equipment delivery dates to the customer.

70.     Premier has been damaged in overtime costs as a result of Vista's failure to provide deliverables acceptable to Premier's customer in the amount of $419,011.00 as of January 9, 2009, however, such costs are accumulating daily and will be determined at the time of trial.

**Overtime Charges Due to Schedule Impact on Slab Tank Project 6315**

71.     Premier re-pleads and incorporates herein paragraphs 1 through 70 as if set forth more fully hereinafter.

72.     As a result of Vista's failure to provide deliverables that were acceptable to Premier's customer, Premier's schedule was negatively impacted and forced Premier to work overtime on Slab Tank Project 6315 to recover as much as possible and support the overall equipment delivery dates to the customer.

73.     Premier has been damaged in overtime costs as a result of Vista's failure to provide deliverables acceptable to Premier's customer in the amount of $82,983.00 as of January 9, 2009, however, such costs are accumulating daily and will be determined at the

time of trial.

**Un-absorbed Overhead Related to Lack of Vista Performance**

74.     Premier re-pleads and incorporates herein paragraphs 1 through 73 as if set forth more fully hereinafter.

75.     As a result of Vista's failure to provide deliverables that were acceptable to Premier's customer, Premier's schedule was negatively impacted and Premier has accumulated unallocated overhead and been damaged in the amount of approximately $203,483.00.

**Material Escalation Cost Due to Lack of Vista Performance**

76.     Premier re-pleads and incorporates herein paragraphs 1 through 75 as if set forth more fully hereinafter.

77.     Premier's customer has discovered an error in the analysis performed by Vista of the anchor bolts which affected all eleven calculations completed by Vista.  This error called into question the adequacy of the sizing of the anchor bolts which prevented material orders from being placed.

78.     As a result of the materials not being able to be ordered per the original project schedule of February 2007 due to Vista's error (and in fact not being able to be ordered until March 2008, July 2008, and August 2008) Premier was damaged in the amount of $4,217 due to the escalation costs of the material.

**PRAYER FOR RELIEF**

WHEREFORE, Premier prays for the following relief:

A.     For judgment on Premier's claims awarding damages in an amount to be

proved at trial, including:

       1.      Payment in the amount of $672,018.00 paid to Vista for unusable deliverables;

       2.      Consequential damages in the amounts set forth above as proven at the time of trial;

       3.      Special and general Damages as a result of loss of reputation/loss of business opportunity in an amount to be proven at trial; and

       4.      Other such special and general damages in an amount to be proven at trial.

       B.      Attorney fees and costs as allowed by Idaho Code §§ 12-120(3), 12-121.

       C.      An award of pre-judgment interest at the maximum rate permitted by law pursuant to Idaho Code § 28-22-104 for the money due on the Parties' express contract.

       D.      An award of post-judgment interest at the maximum rate permitted by law pursuant to Idaho Code § 28-22-104.

       E.      For such further relief as this Court may deem appropriate, just, lawful, and equitable.

DATED this 30th day of January, 2009.

                ANDERSON NELSON HALL SMITH, P.A.


                /s/ Blake G. Hall                   
                BLAKE G. HALL

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Defendant requests a trial

of the issues of fact herein by a jury.

DATED this 30th day of January, 2009.

ANDERSON NELSON HALL SMITH, P.A.


/s/ Blake G. Hall
BLAKE G. HALL

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing document upon the

following this 30th day of January, 2009, by mailing or electronic service.


Theresa L. Keyes
K&L Gates LLP
1200 Ironwood Drive, Suite 315
Coeur d'Alene, ID 83814-2260


/s/Blake G. Hall
BLAKE G. HALL