IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| VISTA ENGINEERING TECHNOLOGIES, LLC, a California corporation,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>PREMIER TECHNOLOGY, INC., an Idaho corporation,<br><br>　　　　　　Defendant. | Case No. CV 09-08-BLW<br><br>**ORDER** |

Currently pending before the Court is Plaintiff Vista Engineering Technologies, LLC,'s Motion to Compel (Docket No. 21). After reviewing the record and considering oral argument on August 11, 2009, the Court finds, as more fully explained below, that the Motion to Compel should be granted.

**I. Background**

Vista Engineering Technologies, LLC, ("Plaintiff") filed this lawsuit on January 9, 2009, to collect amounts owed for goods and services rendered by Plaintiff to Premier Technology, Inc., ("Defendant") based on a contract between the parties. Defendant filed an answer and counterclaim alleging that Plaintiff cannot establish and/or substantiate several of the charges invoiced to Defendant. (Answer p. 5, Docket No. 4.) A discovery dispute arose with respect to a notice of records deposition and subpoena *duces tecum* served by Plaintiff on a third party, Sterling Innovations ("Sterling"), who had performed an audit of Plaintiff's invoices on behalf of Defendant in May of 2008. In an attempt to resolve the discovery dispute, the parties

ORDER - 1

participated in a telephonic mediation session on June 22, 2009. After the mediation session, the Court entered minutes instructing Defendant to serve specific objections to the subpoena *duces tecum*, along with a privilege log, by June 19, 2009. On June 19, 2009, Defendant provided Plaintiff with certain redacted documents and objections to the subpoena; however, no privilege log was produced.

Defendant objected to Sterling producing the documents subject to the subpoena based on the protections of Fed. R. Civ. P. 26(b)(3)(A) and (4)(B), arguing that the audit report by Sterling was prepared in anticipation of litigation and that Sterling is Defendant's consulting, non-testifying expert in this action. On June 26, 2009, the Court entered an order allowing Plaintiff to file the pending Motion to Compel (Docket No. 21.) In its Motion, Plaintiff argues that compliance with the subpoena *duces tecum* should be compelled because Fed. R. Civ. P. 26(b)(3)(A) and (4)(B), do not apply, Defendants waived any privilege by voluntary disclosure of the audit results, and finally, even if the protections of Fed. R. Civ. P. 26(b)(3)(A) and (4)(B) apply, extraordinary circumstances justify disclosure of the audit report to Plaintiff. The Court will address the parties' arguments below.

## II. DISCUSSION

Fed. R. Civ. P. 26(b)(3)(A) states that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative...." Fed. R. Civ. P. 26(b)(4)(B) protects from disclosure " facts known or opinions held by an expert who [1] has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and [2] who is not expected to be called as a

witness at trial." The person claiming the protection from disclosure has the burden of proving that what they are seeking to protect was done in anticipation of litigation.

The advisory notes further state that subdivision b(4) "does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such experts should be treated as ordinary witnesses." Fed. R. Civ. Pro. 26(b)(4)(A), notes. Further, the Ninth Circuit Court of Appeals has held that a document is prepared in anticipation of litigation if, "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *United States v. Torf*, 350 F.3d 1010, 1016 (9th Cir. 2004). However, documents prepared in the ordinary course of business are not prepared in anticipation of litigation. *United States v. Adlman*, 134 F.3d 1194, 1202 (2 d Cir. 1998).

In the instant case, the debate is whether the audit requested by Defendant and for which Defendant employed Sterling in April of 2008 was performed in anticipation of litigation, such that the records prepared and compiled by Sterling in connection with the audit are protected from disclosure. In analyzing the issues presented, a brief history of the communications between the parties is helpful.

Plaintiff contacted Defendant with respect to payment of three invoices on April 24, 2008, and on that date Defendant told Plaintiff it had retained Sterling to perform an audit of the unpaid invoices regarding time and materials work Plaintiff had completed for Defendant pursuant to their contract. (Memo in Support p. 2, Docket No. 22.) In an email sent on April 25, 2008, from Defendant's Contracts Manager, Barbara Clezie, to Plaintiff explaining the purpose

ORDER - 3

of the audit, Defendant stated "it is necessary for Premier [Defendant] to verify that the rates, adders, and fees are fair and reasonable." (Sullivan Dec. Exh. A, Docket No. 24-2.) There is no indication in this initial communication that the audit was being requested for any purpose other than to process the invoices and "ensure the value is in place for Premier." *Id*.

On April 29, 2008, Plaintiff received an email from Dale Wells ("Wells") of Sterling, informing Plaintiff that it would be given an exit interview with Wells discussing the results of the audit, once completed. (Sullivan Dec. Ex. B Docket No. 24-2.) This email was copied to Defendant. On May 11, 2008, Plaintiff sent a letter to Defendant outlining the parameters of the audit, insisting on a non-disclosure agreement "in the event of litigation,"[1] and informing Defendant that Plaintiff would "stop work by Thursday May 15th until all of the invoices…are paid." (Sullivan Dec. Ex. C, Docket No. 24-2.) Further, on May 11, 2008, Plaintiff disputed Defendant's contractual ability to audit the account: "[t]here is no provision in the Terms and Conditions of our contract for the conduct of an audit as a condition of payment…[and] the timeliness of this audit has no bearing on Premier's obligation to pay these invoices by May 15, 2008."[2] (Sullivan Dec. Ex. C, Docket No. 24-2. ) On May 12, 2008, Defendant responded to plaintiff in an letter stating that Defendant's request for an audit was "not a condition for payment… but part of the review and approval process so that the invoices can be processed." (Sullivan Dec. Ex. D, Docket No. 24-2.)

---

[1] During oral argument on the motion, the parties explained that no non-disclosure agreement was reached between the parities and none, at least in writing, exists between Sterling and Defendant.

[2] The Court further notes that Defendant's counterclaim includes the costs and expenses of the audit as an element of damages. (Answer pp.15-16 ¶¶ 15-16, Docket No. 4.)

ORDER - 4

The audit was conducted by Wells on May 13 and 14, 2008, at Plaintiff's place of business and involved interviews of a number of Plaintiff's employees and inspection of several of Plaintiff's documents. Plaintiff was provided an exit interview with Wells and prepared its own summary notes of the findings of the audit, but the audit report itself was not provided to Plaintiff. After the audit was completed, communications between the parties contained clear threats of litigation regarding future work, if any, to be performed by Plaintiff.

Plaintiff argues that the communications between the parties demonstrate that the audit was not conducted in anticipation of litigation, but instead as part of Defendant's alleged contractual rights and "part of the review and approval process" so that Defendant could process and eventually pay Plaintiff's invoices. Thus, Plaintiff contends the audit was completed in the ordinary course of business, making Sterling's representative, Wells, an ordinary witness and all of his interview notes, work papers and the audit report itself discoverable. Further, Plaintiff argues that, at the time Sterling was retained by Defendant, litigation was, at most, a remote possibility. Plaintiff contends this conclusion is supported by the fact that Sterling was retained by Defendant's contracts manager and not by Defendant's legal counsel. Finally, Plaintiff argues that, even if Sterling was retained for "mixed" purposes, the litigation purpose does not permeate any non-litigation purpose so that the two purposes cannot be discretely separated and, therefore, the protection does not apply. See *Torf*, 350 F.3d at 1018.

In response, Defendant argues the communications between the parties necessitate the opposite conclusion, and that, as early as April 25, 2008, it was clear "any unsubstantiated work" as determined by the audit "would inevitably lead to disputes that would likely be litigated." (Response p.3, Docket No.27.) Specifically, Defendant contends that threats of litigation during

April and May of 2008 make it clear that the audit was done in anticipation of litigation. In support of its position that the prospect of litigation was apparent, Defendant specifically points to Plaintiff's threat to stop work contained in the May 11, 2008 letter, and letters and emails sent after the completion of the audit.

After reviewing the emails, letters and other matters in the record, the Court finds that Defendant failed to meet its burden of proof with respect to applicability of Fed. R. Civ. P. 26(b)(3)(A) or (4)(B) to the records of Sterling regarding the audit conducted in May of 2008. There is no evidence in the record to demonstrate that, at the time Sterling was employed by Defendant to perform an audit of Plaintiff's invoices, Sterling was retained either by Defendant or Defendant's attorneys in anticipation of litigation or in preparation for trial. Notably, no documents memorializing the terms of retention of Sterling by Defendant or by Defendant's attorneys were produced to Plaintiff or provided to the Court.

Although Defendant points to the communications between the parties discussed above, including the first email dated April 25, 2008, as demonstrating that litigation was likely, the email from Ms. Clezie indicates Defendant retained Sterling to "move forward with processing the fixed-price invoices." There is nothing in the email even hinting at the possibility that Sterling was retained at that time by Defendant, or Defendant's law firm, as either a consulting expert because litigation over payment of the invoices was likely or in preparation for trial. With respect to the later emails and communications that include clear threats of litigation, the Court finds no link between those communications and the purpose for the initial retention of Sterling by Defendant in April of 2008. Thus, the Court finds that the business records of Sterling requested in Plaintiff's subpoena to Sterling, to the extent they relate to the audit conducted by

Sterling on May 13 and 14, 2008, and the audit report itself, are not protected from disclosure under Fed. R. Civ. P. 26(b)(3)(A) or (4)(B).  Plaintiff's Motion to Compel is therefore granted.

Plaintiff made two further arguments in support of its Motion to Compel.  First, that even if Sterling was retained in anticipation of litigation, Defendant waived any protection because Sterling voluntarily disclosed the results of the audit to Plaintiff;  and second, even if Sterling was retained in anticipation of litigation, exceptional circumstances exist that would justify production of the subpoenaed documents.  As the Court has already determined that the protections of Fed. R. Civ. P. 26(b)(3)(A) and (4)(B) do not apply to the ordinary business records of Sterling regarding the May 2008 audit, the Court need not address either of these arguments further.

## ORDER

Based on the foregoing, and being fully advised in the premises, **IT IS HEREBY ORDERED that:**

A)  The Motion to Compel (Docket No. 21) is granted; and

B)  Sterling and Defendant shall comply with the subpoena *duces tecum* (Bassett Decl. Ex. 1, Docket No. 23-2) within fourteen (14) days of this Order.



DATED: August 19, 2009

Honorable Candy W. Dale
Chief United States Magistrate Judge