IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VISTA ENGINEERING TECHNOLOGIES, LLC, a California Corporation, <br><br>Plaintiff,<br><br>v.<br><br>PREMIER TECHNOLOGY, INC., an Idaho Corporation,<br><br>Defendant. | Case No. CV-09-08-E-BLW <br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion by Vista to amend its complaint to add a claim for punitive damages. The motion is fully briefed and at issue. For the reasons explained below, the Court will grant the motion.

## BACKGROUND FACTS

This is a breach of contract action by Vista to recover payments allegedly due from Premier for engineering services. Premier had earlier entered into contracts with AREVA MOX Services LLC to provide two types of tanks – slab and annular – to be used at the Savannah River Nuclear Site. Premier then

**Memorandum Decision and Order – Page 1**

contracted with Vista to have it perform the design engineering for both types of tanks.

The parties have conflicting opinions over whether Vista provided competent designs. Premier alleges that it was "[f]acing pressure from MOX" due to Vista's poor work. *See Declaration of Clezie* at p. 8, ¶ 26. Vista alleges that it was adhering to the contract.

It is undisputed, however, that in February of 2008, MOX and Premier entered into an agreement, described by Premier's Contracts Manager Barbara Clezie as follows: "MOX required Premier to agree that it would not be entitled to collect money from MOX for any work done by Vista relating to the Slab Tanks or Annular Tanks, including engineering and design work that had not already been paid by MOX." *See Declaration of Clezie* at p. 9, ¶ 33. That agreement also provided that "MOX would provide Premier with technical assistance, as reasonably requested by Premier, to assist Premier in any potential claims Vista may assert against Premier in the future." *Id.* at ¶ 35.

This agreement was not communicated to Vista, according to Phillip Ohl, Vista's President. *See Declaration of Ohl* at p. 6, ¶ 19 (the agreement between MOX and Premier "was unknown to Vista until Premier produced documents . . . in discovery"). Instead, Premier insisted that Vista keep working. *See Exhibit J to*

**Memorandum Decision and Order – Page 2**

*Declaration of Ohl.*

In opposing this motion, Premier submitted the Declarations of its Contracts Manager, Barbara Clezie, and its Engineering Manager, James Lockhart. Neither testifies that Premier informed Vista of its agreement with MOX. Premier's counsel states in his brief that "Vista was informed of this fact," but he provides no dates and no citations to the record. Statements in a brief are not evidence. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). Thus, on the record provided to the Court, there is no rebuttal to Ohl's statement that Premier did not notify Vista of the agreement with MOX until after this lawsuit was filed.

For the next four months, Ohl alleges, Vista "continued to perform and provide value to Premier," and Premier did nothing to inform it that MOX refused to pay for any further work by Vista. *See Declaration of Ohl* at pp. 7-8, ¶ 27. As evidence that Premier was leading Vista on, Ohl points out that a month after the agreement with MOX, Premier approved (although never paid) Vista's costs in a revision to the contract. *Id.* at p. 7, ¶¶ 21-25.

Premier counters that Vista did not provide any acceptable design material and was told in "many conversations" that its work "was not in compliance with the contract specifications and was unacceptable to Premier and MOX." *See*

**Memorandum Decision and Order – Page 3**

*Declaration of Lockhart* at p. 3, ¶ 12. Premier does not provide the Court with any written notices to Vista that its designs were deficient. Ohl alleges that "Premier never provided notice to Vista that its work was unacceptable, or notice of an opportunity to cure alleged defects in its deliverables . . . ." *Id*. at p. 8, ¶ 28.

In April of 2008, Premier demanded that Vista submit to an audit of its invoices as a condition of being paid. Vista agreed, and the audit report, filed May 25, 2008, recommended that the vast majority of the invoices – $611,923 out of $627,027 – be paid.

About two weeks later, on June 11, 2008, Premier sent a letter to Vista terminating the contract. The termination was "without cause," and the letter does not mention any design deficiencies. *See Exhibits M & N to Declaration of Ohl.*

Premier hired another firm – M & D Professional Services – to complete the work. Premier requested that Vista send certain MathCad files concerning the project and promised that "the Premier check [for $407,567.55] will be sent via Fed Ex overnight to your office upon email receipt of the MathCad Files currently maintained by Vista Engineering." *See Exhibit O to Declaration of Ohl*. Throughout this time, Premier was telling Vista that it needed more detail in Vista's invoices to support a Request for Equitable Adjustment that Premier was preparing to submit to MOX to get Vista paid. *See Declaration of Ohl* at p. 11.

**Memorandum Decision and Order – Page 4**

¶ 45.  According to Ohl, Vista provided proper invoices and sent the MathCad files, but Premier never made the payments it promised.  *See Declaration of Ohl* at p. 10, ¶¶ 38-39.

Throughout the contract's term, Ohl alleges, Premier had authorized its Project Manager Stacey Raben to approve changes to the contract and pricing.  Ohl alleges that Raben expanded the scope of work, and that Vista significantly increase its efforts, believing that it would be fully reimbursed.  *Id*. at p. 15, ¶ 56.  Now, however, Premier denies that Raben had any authority to approve changes or pricing.

Ohl asserts that "Vista is a relatively small engineering firm" and Premier's refusal to pay has had a "tremendous financial impact on Vista."  *Id*. at p. 13, ¶ 53.  He claims that Vista "would not have continued to perform work had it known that Premier had no intention of compensating Vista."  *Id*. at p. 14, ¶ 55.

## STANDARD OF REVIEW

To be entitled to amend, Vista must establish "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages."  *See* Idaho Code § 6-1604(2).  Punitive damages are warranted when "the defendant acted with an extremely harmful state of mind, whether that be termed 'malice, oppression, fraud, or gross negligence;' 'malice, oppression, wantonness;' or

**Memorandum Decision and Order – Page 5**

simply 'deliberate and willful.'" *Gen. Auto Parts Co., Inc. v. Genuine Parts Co.,* 979 P.2d 1207, 1211 (Idaho 1999).

In Idaho, punitive damages are not limited to tort cases. "It is not the nature of the case, whether tort or contract, that controls the issue of punitive damages. The issue revolves around whether the plaintiff is able to establish the requisite intersection of two factors: a bad act and a bad state of mind." *Myers v. Workmen's Auto Ins.Co.,* 95 P.3d 977, 985 (Idaho 2004). The Idaho courts have further explained that in contract cases, "[i]f a party breaches its duty to act in good faith, it may be liable for not only the usual damages resulting from the breach, but also punitive damages." *Cuddy Mountain Concrete, Inc. v. Citadel Constr., Inc.,* 824 P.2d 151, 160 (Idaho Ct. App. 1992). The *Cuddy Mountain* decision concluded that punitive damages in contract cases is based on "conduct which is unreasonable and irrational in the business context." *Id*.

## ANALYSIS

Premier argues first that Vista's motion is late because motions to amend were due on June 4, 2009. This argument ignores the Court's Case Management Order that applies the deadline to all motions to amend "except for allegations of punitive damages." *See Case Management Order at ¶ 2 (docket no. 12)*. The Court finds the motion to be timely, and will turn to the substantive arguments

**Memorandum Decision and Order – Page 6**

made in the motion.

The standard of review is critical.  The standard for being allowed to claim punitive damages is obviously more lenient than the standard for prevailing – Vista need only show that it has a reasonable likelihood of proving facts showing that Premier engaged in malicious or oppressive conduct.

While many facts are in dispute, the central fact underpinning the punitive damage claim is undisputed:  MOX and Premier entered into an agreement in February of 2008 that MOX would not pay for any further work by Vista.  Ohl testifies that Vista was never notified of this agreement, and Premier submitted no competent evidence to the contrary.

Premier's counsel states that "Premier did nothing in that agreement [with MOX] to modify any payment obligation that may have existed between Premier and Vista."  *See Response Brief* at p. 11.  But if Premier intended to pay Vista out of its own pocket, nothing in the record provided by Premier so indicates.  All the record shows is that Premier obtained MOX's promise to help if Vista sues, an alliance unnecessary if Premier intended all along to pay Vista.

Premier's complaints about inaccurate invoices appear to confirm Vista's claim that it was being strung along by delaying tactics.  Even after an audit resolved Premier's stated concerns, Premier took no action to pay Vista.

**Memorandum Decision and Order – Page 7**

Thus, it is reasonably likely that Vista can prove facts showing not only that it was never notified of the agreement, but also that Premier never had any intention of paying Vista out of its own pocket. Premier's subsequent promises of payment – and assurances that it would seek payment for Vista from MOX – look like an attempt to lure Vista into providing design work for free. Luring another to provide valuable work with knowingly false promises of payment goes beyond the sharp practices typical of the rough commercial marketplace, and could better be described as malicious or oppressive conduct. *See Hansen-Rice, Inc. v. Celotex Corp.*, 414 F.Supp. 2d 970 (D.Idaho 2006) (allowing punitive damage amendment where defendant made knowingly false promises to obtain repairs). It is therefore reasonably likely that Vista can prove facts showing that Premier is liable for punitive damages. Accordingly, the motion to amend will be granted.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Vista's Motion to Amend to add Punitive Damages (Docket No. 41) is GRANTED.

**Memorandum Decision and Order – Page 8**

IT IS FURTHER ORDERED, that Vista resubmit the Proposed First Amended Complaint (Docket No. 41-exhibit 1) to the Clerk with the word "Proposed" on the title stricken, and that the Clerk shall file that Amended Complaint.

DATED: **January 20, 2010**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge