IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| VISTA ENGINEERING TECHNOLOGIES, LLC, | ) ) ) ) | Civ. No. 09-0008-E-BLW |
| Plaintiffs, | ) ) |  |
| v. | ) ) ) | MEMORANDUM DECISION AND ORDER |
| PREMIER TECHNOLOGY, INC., | ) ) ) ) |  |
| Defendant. | ) ) |  |

## INTRODUCTION

The Court has before it cross-motions for summary judgment. The Court heard oral argument August 26, 2010, and took the motions under advisement. For the reasons expressed below, the Court will deny both motions.

## BACKGROUND FACTS

This is a breach of contract action by Vista to recover payments allegedly due from Premier for engineering services. Premier had earlier entered into contracts with AREVA MOX Services LLC to provide two types of tanks – slab

**Memorandum Decision & Order – page 1**

and annular – to be used at the Savannah River Nuclear Site. Premier then contracted with Vista to have it perform the design engineering for both types of tanks.

More specifically, Premier hired Vista to determine whether the tank designs would withstand seismic stresses, and would satisfy safety criteria – set forth in the ASME Code – for vessels that will be subjected to pressure. The MOX specification required that some tanks be analyzed using a Dynamic Analysis, but allowed the use of a less expensive type of test known as Static Analysis if the subcontractor was able to show that it was appropriate.

Vista submitted a bid for $246,439. Vista's bid contained a statement that Vista assumed that the Static Analysis would be used and that any change in that assumption would mean that "both cost and schedule impacts are probable." *See Exhibit 1 to Clezie Declaration.*

Premier accepted Vista's bid without objection, and incorporated that bid into a Purchase Order that also incorporated certain standard Premier terms and conditions, including Section E, that stated in pertinent part as follows: "Payment can be requested once the completed submittal per [MOX] specification and this Purchase Order have been met and accepted."

Premier argues that this provision requires that Vista obtain MOX's

approval before Vista may be paid. However, Premier's Contracts Manager, Barbara Clezie, testified that references in Section E to MOX should be interpreted as references to Premier. *See Clezie Deposition* at pp. 36-37. Confirming this interpretation are undisputed facts that (1) Vista provided its deliverables to Premier, not MOX, and (2) Vista received the specifications from Premier, not MOX.

The effect of Clezie's interpretation would be that Premier – not MOX – would need to judge Vista's work. There is no evidence in this record that Premier ever notified Vista in writing that its work was deficient. Indeed, Premier's Engineering Manager, Jim Lockhart, proffered by Premier as its Rule 30(b)(6) representative, testified that Premier relied entirely on MOX to judge whether Vista's submissions complied with contract specifications. *See Lockhart Deposition* at pp. 33-34.[1] The record is replete with examples of Premier praising Vista for its work. *See e.g. Exhibit FF (e-mail from Premier's Raben telling Vista "You are crusin'! Good job to you and your team"); Exhibit BB (Premier thanking Vista "for your hard work & patience").* And there is no documentary evidence in the record that Premier rejected Vista's work based on MOX's dissatisfaction, or that MOX provided any written notice to Vista that its work was

---

[1] Vista seeks to strike portions of the June 14, 2010, Declaration of James Lockhart.

**Memorandum Decision & Order – page 3**

deficient.

Premier counters that Vista did not provide any acceptable design material and was told in "many conversations" that its work "was not in compliance with the contract specifications and was unacceptable to Premier and MOX." *See Memorandum Decision (docket no. 64)* at pp. 3-4. That testimony is countered by Vista's President Philip Ohl who testified that "Premier never provided notice to Vista that its work was unacceptable, or notice of an opportunity to cure alleged defects in its deliverables . . . ." *Id.* at p. 4.

In November of 2006, Vista submitted its plan to do the less-expensive Static Analysis. MOX delayed its response for about a year, far exceeding the contract deadlines for responses. Premier would later conclude that MOX's delay cost "hundreds of thousands of dollars . . ., untold adverse schedule impacts, and unnecessary harm to the relationships between MOX, Premier and its sub-supplier/subcontractors." *See Exhibit H to Ohl Affidavit (letter from Douglas Sayer, Premier's President, to MOX dated March 17, 2009).*

Ultimately, MOX rejected the Static Analysis, and required that the Dynamic Analysis be used to test the designs on all Slab Tanks. Premier agreed with Vista that MOX had improperly rejected the Static Analysis, and sought an equitable adjustment with MOX to cover the additional work caused by the

**Memorandum Decision & Order – page 4**

Dynamic Analysis. *See Exhibits GG, HH & JJ.* In addition, Premier issued fourteen Purchase Order revisions extending Vista's deadlines due to MOX's design revisions, and increasing the price for Vista's work.

In January of 2008, Vista estimated that it would need an additional $2 million – and 23 months – to complete the work, or it could expedite the work in 6 months for $6.5 million. *See Exhibit 1.* The next month – February of 2008 – MOX and Premier entered into an agreement, described by Premier's Contracts Manager Barbara Clezie as follows: "MOX required Premier to agree that it would not be entitled to collect money from MOX for any work done by Vista relating to the Slab Tanks or Annular Tanks, including engineering and design work that had not already been paid by MOX." *See Declaration of Clezie* at p. 9, ¶ 33. That agreement also provided that "MOX would provide Premier with technical assistance, as reasonably requested by Premier, to assist Premier in any potential claims Vista may assert against Premier in the future." *Id.* at ¶ 35.

This agreement was not communicated to Vista, according to Phillip Ohl, Vista's President. *See Memorandum Decision (docket no. 64)* at p. 2. Instead, Premier insisted that Vista keep working. *Id.*

For the next four months, Ohl alleges, Vista "continued to perform and provide value to Premier," and Premier did nothing to inform it that MOX refused

**Memorandum Decision & Order – page 5**

to pay for any further work by Vista. *Id.* at p. 3. As evidence that Premier was leading Vista on, Ohl points out that a month after the agreement with MOX, Premier approved (although never paid) Vista's costs in a revision to the contract. *Id.*

In April of 2008, Premier demanded that Vista submit to an audit of its invoices as a condition of being paid. Vista agreed, and the audit report, filed May 25, 2008, recommended that the vast majority of the invoices – $611,923 out of $627,027 – be paid. *Id.* at p. 4.

About two weeks later, on June 11, 2008, Premier sent a letter to Vista terminating the contract. The termination was "without cause," and the letter does not mention any design deficiencies. *See Exhibits M & N to Declaration of Ohl.* Premier hired another firm – M & D Professional Services – to complete the work.

In an earlier decision, the Court allowed Vista to amend its complaint to add a claim for punitive damages, finding that Vista had a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages. The parties now each seek summary judgment.

## LEGAL STANDARD

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

When faced with cross-motions for summary judgment, the Court must independently search the record for issues of fact. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment – where both parties essentially assert that there are no issues of material fact – does not vitiate the court's responsibility to determine whether disputed issues of material fact are present. *Id.*

## ANALYSIS

### Lack of An Expert

At oral argument, and in its reply brief, Premier argued that Vista has no expert who will testify that Vista satisfied industry standards. To support its

**Memorandum Decision & Order – page 7**

argument, Premier filed a "Notice" attaching portions of the deposition of Vista's expert, Roger Reedy. In those excerpts, Reedy states his intention to testify that Vista followed industry standards. *See Reedy Deposition* at pp. 59-60 (responding to question whether he intended to "testify that Vista's work was done in accordance with acceptable industry standards of the engineering profession," Reedy responded, "[y]es, sir").

Premier responds that Reedy "is not an expert qualified to testify about dynamic analysis in this case." *See Premier's Notice* at p. 2. Reedy's actual testimony was that he is not an expert "on the mechanics of the dynamic analysis" because he has not done the "nuts and bolts of preparing a dynamic analysis" since 1976, but has stayed current in "what you must get when you do it." *See Reedy Deposition* at p. 17. In another section of the deposition, Reedy testifies that he has not reviewed the "individual steps" of Vista's work, "such as computer programs, et. cetera []." *Id.* at pp. 23, 54.

Premier interprets this testimony as an admission by Reedy that he has no expertise in the Dynamic Analysis. The argument has two flaws. First, an expert could know a great deal about a process even without performing it himself or reviewing the performance of a third party. Second, Premier seeks a ruling excluding Reedy's testimony without filing a motion under Rule of Evidence 702

**Memorandum Decision & Order – page 8**

and *Daubert*. Without comprehensive briefing on Reedy's qualifications and methodology, it would be manifestly unjust to exclude any portion of Reedy's testimony or to hold that Vista lacks an expert.

Accordingly, the Court refuses to rule on Reedy's qualifications and methodology under Rule 702 and *Daubert* at this time.

**Interpretation of Contract**

The parties argue over whether the Purchase Order identifies MOX or Premier as the entity responsible for approving Vista's work. It matters little because either way, Idaho law reads into the contract a requirement that the party with approval authority "act fairly and in good faith," and have a "reasonable justification" for withholding approval. *See Cheney v. Jemmett*, 693 P.2d 1031 (Id.Sup.Ct. 1984). Whether the approving entity is MOX or Premier, there are genuine issues of material fact over whether approval was properly withheld. The experts have conflicting opinions, and there is conflicting testimony by the parties, as set forth in some detail above.

For all these reasons, the Court will deny both motions for summary judgment.[2]

---

[2] Premier has filed a motion to strike Ohl's Declaration, and Vista has filed a motion to strike Lockhart's Declaration. In both cases, the Court did not rely on the statements of either Ohl or Lockhart that are the subject of the motions to strike. Accordingly, both motions to strike are deemed moot.

**Memorandum Decision & Order – page 9**

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the cross-motions for summary judgment (docket nos. 93 & 101) are DENIED.

IT IS FURTHER ORDERED, that the motions to strike (docket nos. 118 & 130) are DEEMED MOOT.

IT IS FURTHER ORDERED, that counsel shall immediately contact the Court's clerk Jamie Gearhart (208-334-9021) to set up a Trial Setting Conference to set a trial date and corresponding deadlines for the submission of trial materials.

DATED: **September 16, 2010**

*[signature]*

Honorable B. Lynn Winmill
Chief U. S. District Judge